**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×
JACLYN J. PARK,

       *Plaintiff,*     **19 CV 03901**

  v.

NEW YORK UNIVERSTIY COLLEGE OF DENTISTRY,     **COMPLAINT**
*and* DAVID HIRSHKOWITZ *individually*,

       *Defendants.*
------------------------------------------------------------------------×

      Plaintiff Dr. Jaclyn Park, by her counsel, The Law Offices of Veronica S. Jung PLLC, alleges for her Complaint against Defendant New York University College of Dentistry, as follows:

## PRELIMINARY STATEMENT

      1.    Dr. Jaclyn J. Park, a fifty-five year old Asian American woman of Korean descent, has practiced dentistry for over twenty five years. Dr. Park graduated from the New York University College of Dentistry ("NYUCD" or the "School") in 1991, and began working for the School as a part-time faculty member in 2009.

      2.    Dr. Park is a dedicated member of the School's faculty. For the past five years, Dr. Park has worked as an Adjunct Clinical Instructor at NYUCD's Urgent Care Clinic (the "Clinic"). Dr. Park's performance has been nothing short of exceptional. She routinely supervises the Clinic by herself, and, as a result, carries one of the largest workloads of any part-time faculty member at the school. At the same time, Dr. Park is well regarded by her peers, her students and her supervisors alike.

1

3. Despite having worked for the School for a decade, her outstanding service at the Urgent Care Clinic, and the fact that she is a graduate of the School, NYUCD has repeatedly refused to appoint Dr. Park to a full-time position.

4. Instead, NYUCD has appointed predominantly white, male dentists to its full-time faculty. NYUCD often rejects Dr. Park, despite her qualifications, in favor of White men with less experience and fewer years working at the School.

5. NYUCD now relies on international students to fill its ranks; in particular, Korean students make up roughly one quarter of the student body. The School markets extensively to the Korean and Korean American communities, but its enthusiasm for tuition from these groups does not extend to representing them at the faculty level.

6. The School's management is predominantly White. Its academic leadership is almost exclusively White. Its full-time faculty is disproportionately White as well. NYUCD's ongoing refusal to hire and promote people of color is discriminatory.

7. Defendants violated federal, state, and city law by discriminating against Dr. Park, and their actions caused her significant harm. Dr. Park seeks damages and costs against Defendants for discriminating against her on the basis of her race and national origin, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq* ("NYCHRL").

**JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

8. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff Park's claims arising under § 1981.

9. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

10. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

11. Plaintiff Park respectfully requests a trial by jury.

## PARTIES

12. Plaintiff Park, at all times relevant hereto, was and is a resident of New York County in the State of New York.

13. Upon information and belief, at all times relevant hereto, Defendant NYUCD was and is a educational institution with its principle place of business in New York County in the State of New York.

14. Upon information and belief, at all times relevant hereto, Defendant Hershkowitz was an individual residing primarily in Nassau County in the State of New York.

## STATEMENT OF FACTS

15. Plaintiff Park is a licensed dentist. She is a 55 year-old Korean American woman and a United States citizen.

16. Dr. Park graduated from NYUCD with a Doctor of Dental Surgery ("DDS") degree in 1991.

17. In September 2009, Dr. Park joined NYUCD's Department of Cariology and Comprehensive Care as a part-time faculty member.

18. After several successful years at the School, Dr. Park was assigned to cover the Urgent Care Clinic as an Adjunct Clinical Instructor in 2014.  She remained employed as adjunct faculty member, working part-time.

19. Dr. Park's performance at the Clinic has been consistently exceptional.  Dr. Park often supervises the Clinic singlehandedly and routinely works past her scheduled hours

20. NYUCD regularly depended on Dr. Park to ensure that the students in the Clinic are providing adequate patient care.

21. The Clinic's Director, Dr. Laurie Fleisher, acknowledged Dr. Park's hard work, regularly praising her high performance.

22. Dr. Park routinely supervises the entire Urgent Care Clinic on her own and, upon information and belief, logs more procedures than her part-time colleagues.

23. In and around 2014, Dr. Park began applying for full-time positions in the Cariology and Comprehensive Care Department.

24. Dr. David Hershkowitz, an Associate Chair of the Department, is largely responsible for overseeing the full-time appointment process.  In practice, however, Dr. Hershkowitz unilaterally decides which candidates to appoint to full-time positions in the School's Cariology and Comprehensive Care Department.

**Defendants Repeatedly Deny Dr. Park Appointment in Favor of Less Qualified Candidates**

25. Each year between 2014 and the present, Dr. Park applied for appointment to a full-time position at the School.

26. Each time, Dr. Hershkowitz rejected Dr. Park, without providing any reason or basis for his decision.

27. These repeated rejections discouraged Dr. Park, particularly when the School elected to cover additional shifts by hiring a new, White faculty member – Dr. Jeff Rosenthal – rather than appointing Dr. Park to full-time.

28. Dr. Park felt distressed and insulted by what amounted to the School concerted refusal to appoint her to a full-time position, despite her stellar performance and history at the School.

29. Dr. Hershkowitz continued to deliberately insult Dr. Park during the application process.

30. For example, when Dr. Park applied for full-time appointment in 2016, she was, again, scheduled for an interview.

31. However, when Dr. Park arrived for her interview at the scheduled time, Dr. Hershkowitz was completing an interview of another candidate. When Dr. Hershkowitz saw that Dr. Park was the next candidate to be interviewed, he stated in a dismissive tone, "I already know who you are."

32. Dr. Herskowitz then abruptly left Dr. Park to be interviewed by another faculty member, Dr. Morey Gendler.

33. Given that Dr. Hershkowitz made appointment decisions in the Cariology and Comprehensive Care Department, it became clear to Dr. Park that she would not receive a full-time appointment in 2016. Dr. Park was not only dismayed at her inevitable rejection, but dejected, insulted, and personally humiliated as well.

34. As expected, Dr. Hershkowitz passed her over again for a full-time position.

35. After being rejected in 2014, 2015, 2016, and again 2017, Dr. Park did everything she could to support her 2018 application for full-time appointment.

36. In 2018, when Dr. Park appeared for her interview for the position, she was dismayed to find that Dr. Hershkowitz, once again, refused to interview her personally.

37. After Dr. Hershkowitz refused to even give her the courtesy of an interview, Dr. Hershkowitz again rejected Dr. Park's application for appointment to a full-time position at the School.

38. By this time, Dr. Park had grown increasingly troubled by her repeated rejection and Dr. Hershkowitz's appointment of less-qualified White and male candidate to full-time positions.

39. Dr. Park spoke to Julia Murphy, the Assistant Dean of Human Resources, and shared her concerns that she, a well-qualified Korean American woman, was being passed over for full-time appointment in favor of White, male doctors with less experience and shorter time working at NYUCD.

40. In response to this complaint, Ms. Murphy suggested that Dr. Park speak with Dr. Andrea Schreiber, the Chair of the Cariology and Comprehensive Care Department and Dr. Hershkowitz's superior.

41. In late 2018, Dr. Park met with Dr. Schreiber to discuss the School's ongoing refusal to grant her full-time appointment, as well as her interactions with Dr. Hershkowitz.

42. Dr. Schreiber suggested that Dr. Park could improve her chances of appointment by volunteering more of her time to the School by, for example, interviewing incoming students.

43. In fact, in 2017, Dr. Park reached out to Dr. Eugenia Mejia in 2017 about assisting in interviews. Dr. Mejia turned Dr. Park away, because Dr. Park's responsibilities at Urgent Care meant that she did not have the necessary flexibility to conduct student interviews.

44. In February 2019, the School announced its full-time appointments  As Dr. Park had expected, she was not selected for a full-time position.

45. Instead, the School appointed two White, male dentists, both of whom had begun working for NYUCD well after Dr. Park, and both of whom had lesser workloads and responsibilities than Dr. Park.

46. Being rejected for the full-time promotion yet again has been deeply humiliating for Dr. Park.  Her peers and colleagues were well aware of Dr. Park's repeated application and considered her to be a "shoo-in."

47. In fact, following the February 2019 announcement, several faculty members approached Dr. Park, assuming that she had been promoted to the full-time faculty.

48. In response, Dr. Park has had to repeatedly explain to these fellow faculty members that she did not actually receive the appointment, that she did not know why she did not receive the appointment, and that she did not know why Drs. Pikser and Buccigrossi were selected over her.

7

49. Even Dr. Pikser, one of the White men who received a full-time appointment in 2019, congratulated Dr. Park on her receiving a full-time appointment, then expressed surprise that the School did not appoint Dr. Park to its full-time faculty.

50. Dr. Park now has to face humiliation and shame when she goes to work; this ordeal has taken a severe mental and emotional toll on Dr. Park.

51. Further, Dr. Hershkowitz's failure to appoint Dr. Park to a full-time position is not the only way in which he has damaged Dr. Park's professional career and reputation.

52. For many years, Dr. Hershkowitz oversaw the Urgent Care Clinic's weekend practice ("AHEC"), which is a relatively lucrative opportunity for faculty to work additional hours.

53. As one of, if not the most hardworking faculty members in the regular Urgent Care Clinic, Dr. Park had hoped to be included in the AHEC. However, Dr. Hershkowitz never offered Dr. Park the opportunity to work these weekend hours in the AHEC.

54. Instead, Dr. Hershkowitz spread the work hours out among himself and the mostly White male colleagues that are close to him.

55. Moreover, Dr. Park is not the first Asian American woman to be repeatedly denied a full-time position.

56. Dr. Grace Yi-Ying Su, a Chinese American woman, did not receive an appointment to a full-time position until she had worked for the School for over twenty years. When the School finally did promote Dr. Su, it did so only because of an urgent vacancy in a less-desirable facility away from the School's main location.

57. The School's actions are particularly offensive to Dr. Park because of the demographics of the School's student body. Upon information and belief, approximately one

quarter of its students are Korean or Korean American.  Even though the School goes out of its way to recruit Korean and International students, it continually fails to promote diversity in its own ranks and maintains a full-time faculty which is disproportionately White and male.

**Dr. Park Repeatedly Complained About the Standard of Patient Care in the Clinic**

58. In her capacity as an Adjunct Clinical Instructor, Dr. Park directly oversees NYUCD students at the Urgent Care Clinic as part of her responsibilities at the School.

59. Students perform the vast majority of procedures at the Clinic as part of their professional training

60. Dr. Park did her best to ensure that patient health and safety was always adequately maintained.

61. However, on several occasions, Dr. Park expressed concern to Dr. Hershkowitz about dangerous actions taken by students in the Urgent Care Clinic in the treatment of patients.

62. Dr. Park requested that Dr. Hershkowitz, the Associate Chair overseeing the Clinic, intervene in maintaining adequate patient care standards at the Clinic.

63. For example, Dr. Park informed Dr. Hershkowitz of instances where students at the Urgent Care Clinic performed medical procedures on patients without receiving Dr. Park's approval to do so.

64. Dr. Park also warned Dr. Hershkowitz that students were treating patients despite contraindication by their vital signs.  In one instance, a student attempted to perform a surgical procedure despite the patient's dangerously high blood pressure.

65. Dr. Park also complained about students' repeated failure to complete necessary pre-procedure documentation and incidents where students had confused patients' medical charts.

66. These type of documentary errors could lead to serious patient harm in the wrong circumstances.

67. Dr. Park asked that Dr. Hershkowitz take action in the Clinic to ensure that students were meeting patient care standards.

68. Dr. Hershkowitz curtly dismissed Dr. Park's concerns and refused to get involved in the operations of the Urgent Care Clinic. Moreover, Dr. Hershkowitz expressed his personal displeasure at the fact that Dr. Park had brought these items to his attention, and discouraged her from doing so again.

69. Dr. Park's complaints, and Dr. Hershkowitz's non-responsiveness and/or negative responses, occurred contemporaneously with Dr. Hershkowitz's repeated rejection of Dr. Park for a full-time position at the School.

70. A full-time position not only entails significantly higher pay, but also health insurance and other benefits and perks.

71. As such, Defendants retaliated against Dr. Park for raising complaints about the quality of patient care at the Urgent Care Clinic.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Race Discrimination in Violation of Section 1981 of the Civil Rights Act of 1866**
**(Against All Defendants)**

72. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 71 with the same force as though separately alleged herein.

73. Section 1981 of the Civil Rights Act of 1866 prohibits discrimination in contract, such as employment, on the basis of race.

74. Defendant Hershkowitz is a manager with the authority to hire and fire employees, and as such is subject to individual liability as contemplated by Section 1981.

75. Defendants discriminated against Plaintiff Park on the basis of her race by taking adverse employment action against her.

76. As such, Defendants have violated Section 1981.

77. As a direct and proximate consequence of Defendants' discrimination, Plaintiff Park has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

78. Defendants' discriminatory treatment of Plaintiff Park was willful and/or in reckless disregard of Plaintiff Park's protected rights.  Accordingly, Plaintiff Park is entitled to an award of punitive damages against Defendants.

**SECOND CAUSE OF ACTION**
**Discrimination in Violation of the NYCHRL**
**(Against All Defendants)**

79. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 78 with the same force as though separately alleged herein.

80. The NYCHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of, *inter alia*, their race, gender, national origin, and pregnancy.

81. Defendant NYUCD is an employer as contemplated by the NYCHRL, and Plaintiff Park is an employee as contemplated by the NYCHRL.

82. Defendant Hershkowitz is a manager subject to individual liability as contemplated by the NYCHRL.

83. Defendants discriminated against Plaintiff Park on the basis of her race and national origin by taking adverse employment action against her.

84. As such, Defendants have violated the NYCHRL.

85. As a direct and proximate consequence of Defendants' discrimination, Plaintiff Park has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

86. Defendants' discriminatory treatment of Plaintiff Park was willful and/or in reckless disregard of Plaintiff Park's protected rights. Accordingly, Plaintiff Park is entitled to an award of punitive damages against Defendants.

### THIRD CAUSE OF ACTION
**Whistleblower Retaliation in Violation of New York Labor Law Section 741**
**(Against Defendant NYUCD)**

87. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

88. New York Labor Law Section 741 protects health care workers from retaliation for disclosing a policy or practice that constitutes improper patient care.

89. Dr. Park, by being a licensed dentist, is a health care worker as contemplated by New York Labor Law Section 741.

90. Dr. Park was able to make judgments as to the quality of patient care, and was required by Defendant NYUCD to do so as part of her responsibilities at the Urgent Care Clinic.

91. Dr. Park repeatedly brought instances of improper patient care to Dr. Hershkowitz's attention.

92. In response, NYUCD retaliated against Dr. Park by refusing to appoint Dr. Park to a full-time position at the School.

93. As such, Defendant NYUCD violated New York Labor Law Section 741.

94. As a direct and proximate consequence of Defendant's retaliation, Plaintiff Park has suffered, and continues to suffer, substantial damages, all in amounts to be determined at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    A. For the first cause of action, damages to be determined at trial;

    B. For the second cause of action, damages to be determined at trial;

    C. For the third cause of action, damages to be determined at trial; and

    D. For such other and further relief as the Court deems just and proper.

Dated:    New York, New York
            May 1, 2019

Respectfully Submitted,

LAW OFFICES OF VERONICA S. JUNG, PLLC

By:    /s/ Veronica S. Jung
       VERONICA S. JUNG (VJ-6211)
       OWEN H. LAIRD (OL-6994)
       200 Park Avenue, Suite 1700
       New York, NY 10166
       Telephone: (212) 897-1981
       Facsimile: (212) 682-0278

*Attorneys for Plaintiff Jaclyn J. Park*