UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 23, 2021

JACLYN J. PARK,

                  Plaintiff,

v.

NEW YORK UNIVERSITY COLLEGE OF
DENTISTRY & DAVID HERSHKOWITZ,

                  Defendants.

19-CV-3901 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Plaintiff Jaclyn Park, a part-time Adjunct Clinical Instructor, has brought employment discrimination claims against her employer New York University College of Dentistry[1] ("NYUCD") and David Hershkowitz, the former Associate Chair of the University's Department of Cariology and Comprehensive Care (collectively, "Defendants"). On multiple occasions, Park applied and was not selected for a full-time Clinical Educator position with NYUCD. Park alleges that, in considering her candidacy, Defendants engaged in discrimination and retaliation, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. Section 1981 ("Section 1981"); the New York City Human Rights Law, N.Y.C. Admin. Code Section 8-101 *et seq.* ("NYCHRL"); and the New York Labor Law Section 741 ("NYLL Section 741").

Defendants move for summary judgment on all of Park's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court GRANTS Defendants' motion and dismisses the case.

---

[1] Defendants note that Park incorrectly sued New York University College of Dentistry, a college within New York University, and that the correct defendant is New York University. (Mem. at 1, ECF No. 34.) Park's error does not affect the substance of this Opinion.

1

# BACKGROUND[2]

Plaintiff Jaclyn Park is a Korean American dentist who joined NYUCD's Department of Cariology and Comprehensive Care ("the Department") as a part-time Adjunct Clinical Instructor in September 2009. (Def. 56.1 ¶ 21; FAC ¶ 20.) As an Adjunct Clinical Instructor, Park is responsible for supervising dental students in their diagnosis and treatment of clinical patients. (Def. 56.1 ¶ 3.) Such supervision includes approving treatment plans that students formulate prior to treating a patient, approving certain procedures throughout the treatment, and ensuring that students comply with the relevant rules and guidelines. (Def. 56.1 ¶¶ 3-4.)

In addition to hiring part-time Adjunct Clinical Instructors like Park, the Department hires both internal and external dentists to fill the position of full-time Clinical Educator (the "Position") when such positions become available. (Def. 56.1 ¶¶ 13-14.) Among the Department's decision-makers are the Chair of the Department (Mark Wolff from 2005 until 2018, Andrea Schreiber as Interim Chair from July 2018 until October 2019, and Andre Ritter from November 2019 until the present); the Associate Chair of the Department (Defendant David Hershkowitz from 2008 until October 2019); and a Hiring Committee of approximately four to five faculty members appointed by the Chair or the Associate Chair. (Def. 56.1 ¶¶ 7-8, 15.) Hershkowitz served as a member of the Hiring Committee from 2014 until the 2017-18 academic year. (Def. 56.1 ¶ 16.)

The Hiring Committee is charged with reviewing applications that the Department receives, selecting candidates to interview, and recommending a finalist to the Chair for a final interview and selection. (Def. 56.1 ¶¶ 15-16.) In evaluating candidates for the Position, the

---

[2] The facts recited below are taken from the First Amended Complaint ("FAC," ECF No. 21) and the parties' submissions pursuant to Local Rule 56.1 (ECF Nos. 33, 43). They are either undisputed or described in a light most favorable to Park. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Hiring Committee considers, among other factors, a candidate's "education, clinical experience, teaching experience and skill, research, publications, contributions to the dentistry profession, and contributions to the NYU community." (Def. 56.1 ¶ 17.)

From 2014 through 2019, none of Park's applications for the Position was successful.[3] (Def. 56.1 ¶ 28.) The Chair appointed ten candidates of various races to the Position from 2015 until 2019: Samar Tannous (Middle-Eastern) in or about November 2015; Tyra Byrd (Caucasian) and Leonard Berkowitz (Caucasian) in June 2016; Suzette Stines (West Indian and Black) in or about March 2017; Grace Yi-Ying Su (Asian) in September 2017; Maged Iskaros (Middle-Eastern) and Asma Muzaffar (South Asian) in March 2018; Philip Buccigrossi, Jr. (Caucasian), Jarrett Pikser (Caucasian), and Richard Kosofsky (Caucasian) in 2019. (Def. 56.1 ¶¶ 31-36, 39-46, 49-54.)

Because her applications have not been successful, Park met with various members of the Department on two, documented occasions to discuss her qualifications and to obtain advice on ways to improve her candidacy. Park first met with Hershkowitz and Patricia Montalbano (former Department Manager) in or about September 2015. (Def. 56.1 ¶ 30; Montalbano Decl. ¶ 2, ECF No. 48.) Park then met with Schreiber (Interim Department Chair) in November 2018. (Def. 56.1 ¶¶ 78-79.) The latter meeting occurred after Park spoke with Julia Murphy (Assistant Dean of Human Resources and Faculty Services) regarding her belief that she has not been appointed to the Position because she is an Asian female. (Def. 56.1 ¶ 75.) Park's resume remained nearly identical from 2014 through 2019. (Def. 56.1 ¶ 29.)

---

[3] NYUCD promoted Park to part-time Adjunct Assistant Professor in the Department in September 2019. (Def. 56.1 ¶ 27; Pl. 56.1 at 6, ECF No. 43.) Park's promotion, however, is irrelevant to the Court's analysis of Defendants' Motion herein.

Park filed the Complaint on May 1, 2019 (ECF No. 1), and subsequently filed the First Amended Complaint on October 11, 2019. Park alleges that, in considering her candidacy for the Position from 2014 through 2019, Defendants violated both federal law (Section 1981 of the Civil Rights Act of 1866) and state law (NYCHRL and NYLL Section 741) by discriminating against her on the basis of her race and retaliating against her. (FAC ¶¶ 87-125.)

Defendants moved for summary judgment on September 4, 2020. (ECF Nos. 32-34.) Park filed an opposition on October 9. (ECF No. 42.) Defendants filed a reply on October 30. (ECF No. 46.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely disputed when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine dispute as to any material fact, a court must "draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party." *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (citation omitted).

The moving party has the burden of initially demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects*

*Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23). A respondent must offer more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts" to defeat a motion for summary judgment, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION[4]

### I. Section 1981 race discrimination claims

Park's discrimination claims under Section 1981 must be dismissed because she offers no evidence from which a reasonable jury could infer discrimination.

#### A. Legal principles

Park alleges that Defendants violated Section 1981 by discriminating against her on the basis of her race and national origin—that she is Korean American. Park's Section 1981 discrimination claims are analyzed under the three-step burden-shifting framework that the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

At the first step, a plaintiff must offer evidence supporting a *prima facie* case of race discrimination. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discriminatory intent. *See id.*; *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). The Second Circuit has held that the "burden of establishing a *prima facie* case is *de minimis*." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (collecting cases).

---

[4] Any arguments raised by the parties but not specifically addressed below have been considered by the Court on the merits and rejected.

At the second step, the burden "shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action." *Holcomb*, 521 F.3d at 138 (internal quotation marks omitted). The defendant's burden at this stage is "light," as it "need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998) (emphasis in original); *see Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it 'can involve no credibility assessment.'").

At the third step, the burden shifts back to a plaintiff to demonstrate, "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143. In other words, a plaintiff can defeat summary judgment by offering admissible evidence that permits a rational fact finder to infer that the defendant's employment decision was "more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981); *see Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2d Cir. 2001) ("The court must examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder of a central element of a 1981 claim: namely, that defendants intentionally discriminated against them on the basis of their race.").

### B. Application

Park's race and national origin discrimination claims are based upon Defendants' denying her applications for the Position from May 2, 2015 to 2019.[5] Because Defendants offer legitimate, non-discriminatory reasons for denying Park's applications at the second step of the *McDonnell Douglas* inquiry, and Park's claims fail at the third step of the inquiry, the Court need not decide whether Park has established a *prima facie* case of discrimination. *See Pouncy v. Advanced Focus LLC*, 2017 WL 4280949, at *4 (S.D.N.Y. Sept. 25, 2017) (Furman, J.), *aff'd*, 763 F. App'x 134 (2d Cir. 2019).

Defendants satisfy their burden at the second step of the *McDonnell Douglas* inquiry. In evaluating candidates for the Position, the Hiring Committee considered a candidate's "education, clinical experience, teaching experience and skill, research, publications, contributions to the dentistry profession, and contributions to the NYU community." (Def. 56.1 ¶ 17.) Defendants state that the candidates whom they selected over Park for the Position were "objectively better candidates because, in addition to teaching experience and skill, they undisputedly had qualifications that Dr. Park did not have and/or contributed to the NYU committee in ways that Dr. Park had not." (Mem. at 14-16.) As Park admits in her deposition and Rule 56.1 statement, she does not have any degrees other than a bachelor's degree and a doctorate of dental surgery (DDS), does not have any formal advanced training beyond the DDS, does not have experience with any special population of patients, has not received training in evidence-based courses, has not taught continuing education courses, has not presented clinical work or research for professional organizations, has not conducted research or authored

---

[5] As Defendants point out, Defendants' denials of Park's applications prior to May 2, 2015 are barred by the four-year statute of limitations under Section 1981. (Mem. at 24; *see Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d Cir. 2011) (summary order); *Coleman v. City of New York*, 2018 WL 5723133, at *7 (S.D.N.Y. Nov. 1, 2018) (Engelmayer, J.).)

7

publications within the last ten years, has not participated in the peer or self-assessment program, has not participated in formal mentoring programs, and has not interviewed applicants to NYUCD. (*See* Def. 56.1 at ¶¶ 56-64; Pl. 56.1 at 11.) Each of the candidates who were selected over Park during the relevant time period had one or more of the above credentials. (*See* Mem. at 14-16; Def. 56.1 ¶¶ 31-36, 39-46, 49-54.) Because Defendants have articulated non-discriminatory reasons for their decisions to hire candidates rather than Park, the burden shifts to Park at the third step. *See, e.g.*, *Kulkarni v. City Univ. of New York*, 2002 WL 31886639, at *8-9 (S.D.N.Y. Dec. 27, 2002) (Cote, J.).

Park fails to satisfy her burden at the third step of the *McDonnell Douglas* inquiry because she offers no evidence from which a reasonable jury could infer discrimination. As an initial matter, Park concedes that she does not know whether any members of the Hiring Committee held any discriminatory animus against her; that she does not have any information that suggests that Interim Chair Schreiber had a discriminatory animus toward Korean Americans; that at no time during any of the interviews did anyone say anything to suggest bias against her due to her race or national origin; and that she could not identify anything that Hershkowitz said that would suggest he held discriminatory animus based on race or national origin, apart from a remark that Hershkowitz made to her before her interview for the Position in 2016. (*See* Def. 56.1 at ¶¶ 67-69, 71; Pl. 56.1 at 12.)

Park infers that Defendants held a discriminatory animus based on race or national origin from one, stray remark by Hershkowitz. When Park arrived for her interview in 2016, Hershkowitz was completing an interview of another candidate and abruptly left without interviewing Park; he told Park before leaving "I already know who you are." (FAC ¶¶ 33-35; *see* Def. 56.1 ¶ 38.) Park was then interviewed by another faculty member. Hershkowitz states

8

in a declaration that he only left because, prior to the start of the interview, he received a call from the Dean seeking his immediate assistance with an emergency. (Hershkowitz Decl. ¶ 38, ECF No. 36; Mem. at 12; Def. 56.1 at ¶ 37.) Park's inference of discriminatory intent from Hershkowitz's departure and brief statement is unsupported; she does not claim to have any information about why Hershkowitz left. (Def. 56.1 at ¶¶ 37, 69; Pl. 56.1 at 8, 12; *see, e.g.*, *Majied v. New York City Dep't of Educ.*, 2018 WL 333519, at *5 (S.D.N.Y. Jan. 8, 2018) (Furman, J.) (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)) ("[A] solitary, stray remark—and an ambiguous one at that—is insufficient to support an inference of discriminatory animus.").)

In addition to citing the 2016 remark that Hershkowitz made to her, Park argues that Defendants' reasons for not hiring her are pretextual because (1) Hershkowitz and Schrieber sought to hire an individual (whom Park believes is not as qualified as her) from an earlier pool of applicants, before the Position was posted (Opp'n at 16-18, ECF No. 42); (2) Defendants appointed Caucasian men to the three most recent openings for the Position (Opp'n at 13); (3) an internal document describing the candidates for the 2018-19 Position notes that Park was "not a good fit" (Opp'n at 21); and (4) Park believes that she is qualified for the Position (Opp'n at 21).

The Court is not persuaded by any of Park's assertions. The record is devoid of any evidence—direct or indirect—of discrimination based on race or national origin.[6] Park has offered no evidence that any of the Chairs, Hershkowitz, or the Hiring Committee members made any comments or statements with racial content or overtone. *See Lizardo*, 270 F.3d at 104.

---

[6] Although Park stated in her deposition that she was told by an unidentified faculty member that Wolff (Chair from 2005-18) does not like Koreans because his father fought in the Korean war, she does not re-assert or substantiate this claim in her Opposition to Defendants' Motion. (Def. 56.1 at ¶ 70; Pl. 56.1 at 12.) Regardless, the Court will not consider this statement, as it is inadmissible hearsay. *See Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675-76 (S.D.N.Y. 2012) (McMahon, J.) (granting summary judgment and refusing to consider hearsay statement).

Moreover, although the three most recent hires were Caucasian men, from 2014 through 2019, half of the candidates who were appointed were not Caucasian, and four were women. (Def. 56.1 ¶¶ 31-36, 39-46, 49-54; *see* Mem. at 12.) Park fails to offer any evidence that Defendants' reasons were "a pretext for discrimination" or that Defendants' decisions not to hire her for the Position were "*more likely than not* based in whole or in part" on racial or national origin discrimination. *See Stern*, 131 F.3d at 312 (emphasis added); *Reeves*, 530 U.S. at 143; *see, e.g.*, *Montgomery v. New York City Transit Auth.*, 806 F. App'x 27, 31 (2d Cir. 2020) (summary order); *Garcia v. Barclays Cap., Inc.*, 281 F. Supp. 3d 365, 380-81 (S.D.N.Y. 2017) (Broderick, J.). Thus, Park's discrimination claims under Section 1981 must be dismissed.

## II.  Section 1981 retaliation claim

Park's retaliation claim under Section 1981 must be dismissed because she fails to establish a causal link between her complaint and Defendants' adverse employment decision.

### A.  Legal principles

Park argues that Defendants violated Section 1981 by rejecting her application for the Position after she complained of discrimination. Section 1981 retaliation claims are analyzed under the three-step *McDonnell Douglas* burden-shifting framework. *See Holmes v. Astor Servs. for Child. & Fams.*, 2017 WL 3535296, at *6 (S.D.N.Y. Aug. 16, 2017) (Seibel, J.) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

At the first step, to establish a *prima facie* case of retaliation, a plaintiff must show that (1) she was engaged in activity protected under the anti-discrimination statute(s); (2) defendants were aware of plaintiff's participation in the protected activity; (3) defendants took adverse action against plaintiff; and (4) there is a causal connection between plaintiff's protected activity and the adverse action taken by defendants. *See Fincher v. Depository Trust & Clearing Corp.*,

10

604 F.3d 712, 720 (2d Cir. 2010). A plaintiff may establish a causal connection indirectly by showing that the protected activity was followed by discriminatory treatment, or directly through evidence of retaliatory animus. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).

The second and third steps of the *McDonnell Douglas* framework are nearly identical to the steps discussed *supra*. *See Pouncy*, 2017 WL 4280949, at *6. At the second step, defendants must articulate a legitimate, non-retaliatory reason for the action that plaintiff alleges was retaliatory. *Fincher*, 604 F.3d at 720. If defendants do so, then, at the third step, plaintiff must demonstrate that "retaliation was a substantial reason for the complained-of action." *Id.* (citing *Jute*, 420 F.3d at 173).

### B. Application

Park argues that Defendants also violated Section 1981 because, after Park complained of discrimination to Schreiber and Julia Murphy (Assistant Dean of Human Resources and Faculty Services) in October 2018, Defendants retaliated against her by refusing to appoint her to the Position in January 2019. (Opp'n at 6, 18-21.) According to Park, "[t]his denial took place well within the window of temporal proximity and was the first opportunity for Defendants to act against [her]." (Opp'n at 20.) In addition, Park points to largely the same list of allegations discussed *supra*—that Defendants hired three Caucasian men in January 2019; that Hershkowitz and Schreiber sought to hire an individual from a previous pool of applicants before the Position was posted; and that an internal document describing the candidates for the 2018-19 Position notes that Park was "not a good fit." (*See* Opp'n at 19-20.)

Park has not established a *prima facie* case of retaliation at the first step because Park has offered no evidence to establish a causal link between her October 2018 complaint and her

11

January 2019 rejection.[7] First, as Defendants note, NYUCD did not appoint Park to the Position either before or after her October 2018 complaint, because she was not the strongest candidate. (Reply at 7-8, ECF No. 46; *see also Holmes*, 2017 WL 3535296, at *7 ("Because the[] allegedly retaliatory events all occurred before Plaintiff engaged in any protected activity, no causal connection can be established between them and her complaint of discrimination.").)[8]

Second, Park's reliance on the temporal proximity (approximately three months) between her complaint and her rejection is unavailing because the Second Circuit has cited with approval the proposition that "[t]he passage of even two or three months is sufficient to negate any inference of causation" where (as here) no other basis to infer retaliation is alleged. *Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (summary order) (quoting *Williams v. City of New York*, 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) (McMahon, J.)). Thus, Park's retaliation claim under Section 1981 fails.[9]

## III. State law race discrimination and retaliation claims

Having dismissed Park's federal law claims under Section 1981, the Court declines to exercise supplemental jurisdiction over Park's state law claims under the NYCHRL and NYLL Section 741. *See* 28 U.S.C. § 1367(c)(3) ("The district court[] may decline to exercise supplemental jurisdiction over a claim . . . [once] the district court has dismissed all claims over

---

[7] Defendants concede that Park has established the first three elements of a *prima facie* case of retaliation for purposes of this Motion. (Mem. at 19 n.4.)

[8] The 2019 rejection marked the *fifth* consecutive year in which Park was rejected for the Position, having submitted 10 applications over the course of those five years. (Opp'n at 17; Mem. at 1.) Defendants have consistently provided Park with specific feedback on how she could improve her candidacy—feedback that she has not implemented. (*See* Def. 56.1 ¶ 29-30, 78-79, 83; Reply at 8-9; *see, e.g.*, *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70-77 (2d Cir. 2015).)

[9] Even assuming, *arguendo*, that Park did establish a *prima facie* case of retaliation, Defendants have offered legitimate, non-retaliatory reasons for their refusal to appoint Park at the second step of the *McDonnell Douglas* inquiry, as discussed *supra*. At the third step of the *McDonnell Douglas* inquiry, Park cannot show that retaliation was a substantial reason for Defendants' decision for the same reasons that she cannot demonstrate that there is a causal link between her October 2018 complaint and her January 2019 rejection.

which it has original jurisdiction[.]"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL and NYLL Section 741 claims after dismissing all federal claims. *See, e.g.*, *Harris v. NYU Langone Med. Ctr.*, 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014) (Abrams, J.), *aff'd,* 615 F. App'x 49 (2d Cir. 2015) (internal quotation marks omitted) ("[C]omity counsels against exercising jurisdiction over Plaintiff's NYCHRL claim[s], as the NYCHRL has a lower threshold of proof than its federal counterparts and has been applied primarily at the intermediate appellate level of the state courts, with limited opportunity for the New York Court of Appeals to construe it."); *Garcia*, 281 F. Supp. 3d at 388, 388 n.30 (citing cases); *Holmes*, 2017 WL 3535296, at *7; *Triana v. Sodexo, Inc.*, 2018 WL 6413151, at *8 (S.D.N.Y. Dec. 5, 2018) (Abrams, J.).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 32, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: New York, New York
       June 23, 2021

                                              /s/ Kimba M. Wood
                                              KIMBA M. WOOD
                                             United States District Judge